## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DALE CISNEROS,**

                **Plaintiff,**

**v.**                                        **Civ. No. 05-1065 JH/WDS**

**JOE CISNEROS, et al.,**

                **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on *Gabriel and Roxanne Cisneros' Motion to Dismiss No. II: Dismissal of Plaintiff's Federal Civil Rights and State Law Claims* [Doc. No. 60] ("second motion to dismiss"). Defendants Gabriel and Roxanne Cisneros filed their second motion to dismiss after Plaintiff amended his complaint and added both factual allegations and substantive legal claims.[1] The second motion to dismiss encompasses the arguments raised in Gabriel and Roxanne Cisneros' first motion to dismiss (which applied to the original complaint) and therefore renders it moot.

After considering the law, the pleadings, and the arguments of the parties, the Court concludes that the second motion to dismiss should be denied.

## FACTS

In his Amended Complaint, the Plaintiff has alleged the following facts which are relevant to the claims against Defendants, and which the Court accepts as true for the purposes of this Memorandum Opinion and Order.

In the fall of 2001, the Questa Independent School District hired Plaintiff as a counselor and

---

[1] Plaintiff's Amended Complaint is attached to Doc. No. 46 and is hereby deemed filed as of June 28, 2006.

boys' varsity basketball coach at Questa High School, and rehired him in 2002, 2003, and 2004.  Am. Cmplt. at ¶ 14.  In 2004, he also assumed the position of high school athletic director.  *Id*. at ¶ 15. Defendant Gabriel Cisneros ("Gabriel") is Plaintiff's brother and is married to Defendant Roxanne Cisneros ("Roxanne").  *Id*. at ¶¶ 7-8.  Gabriel and Roxanne have a son (Plaintiff's nephew) who, during the events set forth in the Amended Complaint, was on the Questa High School boys' varsity basketball team coached by Plaintiff.  *Id*. at ¶ 17.  At the beginning of the 2004-2005 basketball season, Plaintiff decided that his nephew should not be a "starter" on the team.  *Id.* at ¶ 18.  As a result of this decision, in an attempt to harass Plaintiff and to have him removed as head coach, Gabriel and Roxanne began spreading falsehoods about Plaintiff, accusing him of emotionally and physically abusing his players.  *Id*. at ¶ 19.  Defendant Jimmy Ortega ("Ortega") also had a son on the Questa High School boys varsity basketball team.  *Id*. at ¶ 20.  When Plaintiff benched Ortega's son, Ortega joined with Gabriel and Roxanne in an effort to spread misinformation about Plaintiff for the purpose of harassing him and in an effort to have him fired.  *Id.*  Gabriel, Roxanne, and Ortega circulated a petition at local businesses and inside Questa High School, using their sons to get signatures.  *Id*. at ¶ 21.  The Amended Complaint contains no information as to the content of the petition.

Defendant Tony Archuleta ("Archuleta"), the Superintendent of Questa Independent School District, informed Plaintiff that Gabriel, Roxanne, and Ortega were pressuring him and members of the Board of Education to fire Plaintiff as athletic director and boys' basketball coach.  *Id*. at ¶ 22. Plaintiff alleges that Archuleta knew that their efforts were based not upon fact, but upon malice and a desire for revenge against Plaintiff.  *Id*.  In December of 2004, Archuleta relayed similar information to Plaintiff, saying that Gabriel, Roxanne, and Ortega were putting intense pressure on him and on

2

the Board of Education to fire Plaintiff. *Id.* at ¶ 23. Archuleta said that they had threatened him, saying he would lose his job if he did not fire Plaintiff. *Id.* Archuleta asked Plaintiff to resign, even though Plaintiff had done nothing wrong. *Id.* In early January of 2005, the Board of Education held a meeting at which it permitted a select group of parents, including Gabriel, Roxanne, and Ortega, to lobby the Board to fire Plaintiff. *Id.* at ¶ 24. At this meeting Gabriel, Roxanne, and Ortega made false and outrageous allegations against Plaintiff (although the Amended Complaint contains no information regarding the content of these allegations) with the intent of influencing the Board to fire Plaintiff from his coaching and athletic director positions. *Id.* Ultimately, the Board conducted an investigation into the allegations against Plaintiff and found no evidence that Plaintiff emotionally or physically abused his players. *Id.* at ¶ 24-25. However, despite the lack of evidence against Plaintiff, in late January of 2005, the Board of Education held a closed "executive" session to discuss Plaintiff's position as coach of the varsity boys' basketball team. *Id.* at ¶ 27. Only those opposed to having Plaintiff continue as head coach, including Gabriel, Roxanne, and Ortega, were allowed to attend the closed session. *Id.* at ¶ 27.

After that meeting, Archuleta and the Board of Education placed Plaintiff on administrative leave for the remainder of the basketball season; they gave him no reason for this action. *Id.* at ¶ 28. Plaintiff alleges that all of the foregoing actions by the Board of Education, its members, and its administrative personnel were taken at the instigation and by reason of the influence exerted by Gabriel, Roxanne, and Ortega. *Id.* at ¶ 31. These three parents continued a "whispering campaign" against Plaintiff in the community, resulting in both hostile attitudes and concrete acts of violence and intimidation against Plaintiff. *Id.* at ¶ 33. As a result of the hostile situation created by all defendants, Plaintiff was unable to work at his counseling job for the remainder of the school year. *Id.* at ¶ 35.

3

The following year, Questa Independent School District rehired Plaintiff as a counselor, but not as a coach or athletic director.  *Id*. at ¶ 40.

## DISCUSSION

### I.    LEGAL STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation omitted).  The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of plaintiff, *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The issue in resolving a motion such as this is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support the claims.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

### II.    CLAIMS UNDER 42 U.S.C. § 1983

In Count I of his Amended Complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against all defendants for violation of his federal constitutional rights.  Count V contains a claim for civil conspiracy against all defendants.  In their motion to dismiss, Gabriel and Roxanne contend that

(1) as private citizens, they were not acting "under color of law" as required for liability under Section 1983, and (2) Plaintiff has failed to plead the existence of a conspiracy with adequate specificity. Plaintiff argues that Gabriel and Roxanne should be deemed to be acting "under color of law" by virtue of their participation in a conspiracy with the Questa Independent School District and the other individual school defendants.

A private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Typically, "[t]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity," *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595 (10th Cir. 1999). In *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995), the Tenth Circuit outlined four tests to determine whether "the conduct allegedly causing the deprivation of a federal right" is "fairly attributable to the State" as required for liability under Section 1983. *Id.* at 1447 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). These include the nexus test, the symbiotic relationship test, the joint activity test, and the public function test. *Id.* at 1448-1457. Plaintiff, in turn, does not contend that Gabriel and Roxanne's conduct is "fairly attributable to the State" under any of these tests. Instead, Plaintiff argues that Gabriel and Roxanne acted under color of law by virtue of their participation in a conspiracy with state actors.

A plaintiff may assert the necessary state action for Section 1983 by implicating state officials in a conspiracy with private defendants. As the Tenth Circuit stated in *Dixon v. City of Lawton, OK*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), "[a] § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law. The conspiracy provides the requisite color of state law under § 1983." (internal citations

omitted).  In order to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Id.* at 1449;  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).

In pleading conspiracy, a plaintiff must allege "specific facts showing agreement and concerted action among [the alleged co-conspirators]," *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994), and must demonstrate "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."  *Snell*, 920 F.2d at 702 (quotation omitted).  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  Thus, a plaintiff fails to state a claim for conspiracy absent specific facts showing a "meeting of the minds" among the alleged co-conspirators.

Here, the Plaintiff alleges that in late 2004, Gabriel and Roxanne conspired with Ortega in a joint plan to knowingly spread lies about Plaintiff for the purpose of harassing him and procuring his discipline or dismissal.  Am. Cmplt. at ¶¶ 19-21.  Plaintiff alleges that all the defendants knew that the information about him was untrue.  *Id.* at ¶ 20.  Archuleta, the Superintendent, informed Plaintiff that the private defendants were vigorously pressuring both Archuleta and the members of the Board of Education to fire Plaintiff, and Archuleta knew that the private defendants' efforts were not based upon fact but upon malice and a desire for revenge.  *Id.* at ¶ 22.  Archuleta received pressure from the members of the Board of Education to fire Plaintiff or lose his own job.  *Id.* at ¶ 23.  Archuleta asked Plaintiff to resign, despite the fact that he had done nothing to warrant dismissal.  *Id.*  Plaintiff requested information regarding any complaints against him, but received nothing.  *Id.*  At a meeting of the Board of Education, Gabriel, Roxanne, and Ortega lobbied for Plaintiff's termination, making false accusations against him.  *Id.* at ¶ 24.  The topic was not on the agenda, and no one gave Plaintiff

6

advance notice that the subject would be discussed at the meeting.  *Id.*  The Board of Education ordered an investigation of the allegations against Plaintiff, but did not inform him of the charges. *Id.* The investigation revealed no evidence to support a claim against Plaintiff for wrongdoing.  *Id.* at ¶ 25.

In late January of 2005, the Board of Education held a closed, executive session to discussion Plaintiff's position as boys' varsity basketball coach.  *Id.* at ¶ 27.  Plaintiff received no advance notice that his position would be discussed, the public was not advised of the closed session, and the topic of Plaintiff's employment did not appear on the agenda.  *Id.*  The Board of Education allowed only those opposed to having Plaintiff remain as coach, including Gabriel, Roxanne, and Ortega, to attend the closed session and excluded Plaintiff's supporters.  *Id.*  After the meeting, Superintendent Archuleta, acting at the direction of the Board of Education, placed Plaintiff on administrative leave for the balance of the basketball season, but gave him no explanation for this action.  *Id.* at ¶ 28. Plaintiff then requested a name-clearing hearing before the Board of Education, which it denied.  *Id.* at ¶ 29, 43.  Despite knowing that Plaintiff denied the allegations against him by Gabriel, Roxanne, and Ortega, the Board of Education refused to give Plaintiff the opportunity to be heard or to respond.  *Id.* at ¶ 44.

On this motion to dismiss, the Court not only accepts all facts alleged in the complaint as true, but also "all reasonable inferences are indulged in favor of the plaintiff[]."  *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 881 (10th Cir. 2005).  Viewed in this light, the Court concludes that Plaintiff's allegations of a conspiracy are sufficient to survive a motion to dismiss.  The facts and the reasonable inferences arising from those facts support a claim that all the defendants—the parents, the members of the Board of Education, and the administrators—knew that the allegations against

Plaintiff were true.  This can be inferred from the allegations that Superintendent Archuleta knew that the accusations against Plaintiff were untrue and made for the purpose of revenge, as well as the fact that the Board of Education knew that the allegations against Plaintiff were untrue as a result of their own investigation.  The Defendants never allowed Plaintiff to counter the allegations and denied him a hearing, yet permitted the parent defendants to participate in a closed Board meeting, the result of which was to remove Plaintiff from his coaching and athletic director positions.  These facts and inferences support the allegation of a single plan, the essential nature and general scope of which was known to each defendant, the purpose of which was to deprive Plaintiff of his property and liberty interests without giving him an opportunity to be heard.

Thus, Gabriel and Roxanne's motion to dismiss the federal constitutional claims against them will be denied.

## III.   STATE LAW CLAIMS AND THE *NOERR-PENNINGTON* DOCTRINE

In his Amended Complaint, Plaintiff asserts claims against Gabriel and Roxanne for violations of state law.  These include violation of unspecified state constitutional rights (Count I), tortious interference with existing and anticipated contractual relations (Count III), intentional infliction of emotional distress (Count IV), prima facie tort (Count VI), and defamation (Count VII).[2]  Gabriel and Roxanne argue that they have immunity against these claims because to hold them liable would constitute an infringement of their First Amendment rights to petition the government.  In reaching

_____

[2] Plaintiff also asserts a claim for breach of contract (Count II).  However, the Court does not understand Plaintiff to be asserting this claim against Gabriel and Roxanne.  Plaintiff does not allege that he had a contract with Gabriel and Roxanne, only that he had a contract with the Questa Independent School District.  Further at paragraph 60 of his Amended Complaint, Plaintiff alleges that it was the actions of "Questa Independent School District and the individual *school* defendants" that violated his contract. (emphasis added).  Count II is devoid of allegations against the parental defendants.

that conclusion, Gabriel and Roxanne rely upon the *Noerr-Pennington* doctrine, which provides immunity from antitrust liability for petitions to the courts, provided those petitions are objectively reasonable. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Gabriel and Roxanne wish to extend that doctrine to all state law liability for their allegedly false communications with the school defendants, arguing that they were merely exercising their right to petition the Questa Board of Education to remove Plaintiff from his positions as coach and athletic director.

In *Cardtoons, L.C. v. Major League Baseball Players Association*, 208 F.3d 885, 888-891 (10th Cir. 2000) (en banc), the Tenth Circuit discussed the application of the *Noerr-Pennington* doctrine outside the antitrust context. The question before the court was whether the Petition Clause of the First Amendment immunized the defendant from state tort liability based on statements it made in a cease-and-desist letter sent to a private party. *See id.* at 886-87. The court ultimately concluded such letters are not shielded by the First Amendment because they are not petitions to the government, *see id.* at 893. In reaching that conclusion, the court held that, because the *Noerr-Pennington* doctrine was based on both statutory interpretation and constitutional principles, care must be taken when drawing right to petition principles from *Noerr-Pennington* antitrust cases. *See id.* at 889-91. The holding in *Cardtoons* rested exclusively on the conclusion that a cease-and-desist letter to a private party does not constitute petitioning activity. *Id.* at 886-87, 893. As the court observed, "'the purpose of *Noerr-Pennington* as applied in areas outside the antitrust field is the protection of the right to petition.'" *Id.* at 889 (quoting *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999)).

The Tenth Circuit addressed the applicability of the *Noerr-Pennington* doctrine to common

9

law torts a short time later in *Scott v. Hern*, 216 F.3d 897, 913-916 (10th Cir. 2000), a case relied upon by both Plaintiff and by Gabriel and Roxanne.  In that case, the plaintiff sued a doctor for the torts of abuse of process and false imprisonment after the doctor prepared an affidavit used in a petition filed in court requesting that plaintiff be committed, evaluated, and treated for mental health issues.  *Id*. at 904-05.  The doctor moved for summary judgment on the tort claims, arguing that liability on such claims would infringe his First Amendment right to petition the courts.  Relying upon a decision from the Colorado Supreme Court, the Tenth Circuit found that the doctor was entitled to summary judgment on the abuse of process claim because "there [did] not appear to be even a potential for collision between the common law torts [at issue] and the First Amendment.  *Id*. at 915 (quoting *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995)).  Indeed, the Tenth Circuit reasoned that where a defendant files a motion to dismiss by reason of the constitutional right to petition, the plaintiff must demonstrate that:

> (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.

*Id*. (quoting *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361, 1369 (Colo. 1984) (en banc)).  This test assures that one who petitions the government in good faith and with reasonable basis—even if the petitioner does not ultimately prevail—will maintain an unfettered right to petition.  However, one who petitions the government without basis and who does so with the express intent to injure another may not hide behind the First Amendment's Petition Clause in order to escape liability.

10

Indeed, this is consistent with prior decisions of the Supreme Court, which has held that the right to petition is not an absolute protection from liability.  In *Noerr* the Court stated that immunity does not apply to petitions or lawsuits that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961).  In *McDonald v. Smith*, petitioner wrote a letter to President Reagan accusing respondent of fraud, blackmail, extortion, and the violation of various individuals' civil rights.  Respondent was being considered for the position of United States Attorney but was not appointed.  He brought a libel suit against petitioner, who claimed that the right to petition gave him absolute immunity in his statements to the president. The Supreme Court disagreed:

> To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.

*McDonald v. Smith*, 472 U.S. 479, 485 (1985) (citations omitted).  The Court affirmed the lower courts in allowing the libel action to proceed.  "The right to petition is guaranteed; the right to commit libel with impunity is not." *Id.*[3]

---

[3] Other courts have used similar standards, applying *Noerr-Pennington* immunity only where the underlying petition is objectively reasonable. *See, e.g., Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 2006) (immunity does not apply where the petition is objectively baseless and the defendant's motive in bringing it was unlawful); *Cheminor Drugs, Ltd. v. Ethyl, Corp.*, 168 F.3d 119 (3d Cir. 1999) (*Noerr-Pennington* protection applies to administrative proceedings based on petitions containing misrepresentations as long as there is objective basis for bringing petition); *State of South Dakota v. Kansas City S. Indus., Inc.*, 880 F.2d 40, 50-51 (8th Cir. 1989) (*Noerr-Pennington* exemption shall not apply, however, if the petitioning activities in question were "sham" and in fact solely intended to cause injury).

Applying the three-prong test used by the Tenth Circuit in *Scott v. Hern* to the motion to dismiss in this case, and accepting the Plaintiff's allegations as true as it must on a motion to dismiss, the Court concludes that Gabriel and Roxanne are not entitled to immunity for their petitioning activity. First, Plaintiff has adequately pled that Gabriel and Roxanne's petition that he be removed because he had physically and emotionally abused his players was devoid of reasonable factual support. Indeed, he has pled not only that the accusations were false, but also that an investigation by the Board of Education yielded no evidence to support those accusations. Second, Plaintiff avers that the primary purpose of Gabriel and Roxanne's petitioning activity was to harass him and to get him fired in retaliation for his decision not to play their son as a "starter," and that they knew their accusations were untrue. Third, Plaintiff has pled that their petitioning activity had the capacity to adversely affect, and did in fact adversely affect, his legal interests to the extent that he was fired as coach and athletic director, and that as a result he was not paid as required by his contract. Thus, the Court concludes that Gabriel and Roxanne's motion to dismiss the tort claims on First Amendment grounds should be denied.[4]

Finally, Gabrielle and Roxanne argue that Plaintiff's claim for defamation should be dismissed because he is a public official, and therefore in order to succeed on his defamation claim he must prove that they acted with actual malice in making defamatory statements about Plaintiff. As the Supreme Court explained in *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964), "the constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that

---

[4] The Court expresses no opinion as to whether the First Amendment might, under certain circumstances, provide immunity for state common law torts. This opinion is limited to the facts as pled by the Plaintiff in this case.

the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  Plaintiff, in turn, argues that he is not a public official for the purposes of the tort of defamation, and that even if he were a public official, he has adequately pled facts to support the element of actual malice.  However, the Court concludes that it need not reach the question of whether Plaintiff is a public official for the purposes of the tort of defamation because Plaintiff has adequately alleged facts to support the element of actual malice. Paragraphs 19, 21, 24, 25 and 79 of Plaintiff's Amended Complaint aver that Gabriel and Roxanne made false, defamatory statements about the Plaintiff that were devoid of reasonable factual support, that an investigation of the accusations against Plaintiff revealed no grounds to support their statements, that they made the statements primarily for the purpose of harassing Plaintiff, that they knew the statements about Plaintiff to be untrue, and that they made them deliberately for the purpose of having Plaintiff fired in retaliation for not playing their son as a "starter" on the basketball team. These allegations, accepted as true, are sufficient to support a claim of actual malice.

## IV.    SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS

Gabriel and Roxanne's final argument is that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims and remand them to state court. Gabriel and Roxanne contend that certain unspecified defenses that they have raised in turn create issues of first impression of state law.  However, they have utterly failed to enumerate which of the nine affirmative defenses pled in their answer raises these issues of first impression, or even what the issues of first impression are.  Instead, they leave the Court to simply guess what defenses and what issues are at stake.  Because Gabriel and Roxanne have failed to formulate a cohesive argument on

13

this point, this portion of the motion will also be denied.

**IT IS THEREFORE ORDERED** that:

(1)     Plaintiff's motion to amend complaint [Doc. No. 46] is **GRANTED**, and Plaintiff's amended complaint (attached as an exhibit to Doc. No. 46) is hereby deemed filed as of June 28, 2006;

(2)     *Gabriel and Roxanne Cisneros' Motion to Dismiss No. I: Dismissal of Plaintiff's Federal Civil Rights and State Law Claims* [Doc. No. 29] is **DENIED AS MOOT**, as the arguments contained therein have been fully addressed in this Memorandum Opinion and Order;

(3)     *Gabriel and Roxanne Cisneros' Motion to Dismiss No. II: Dismissal of Plaintiff's Federal Civil Rights and State Law Claims* [Doc. No. 60] is **DENIED**.

**UNITED STATES DISTRICT JUDGE**

14