IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DALE CISNEROS,**

        **Plaintiff,**

**v.**                                                             **Civ. No. 05-1065 JH/WDS**

**JOE CISNEROS, et al.,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

The subject of this Memorandum Opinion and Order is *Defendant Jimmy Ortega's Motion for Summary Judgment* [Doc. No. 55]. After considering the law, the evidence, and the arguments of the parties, the Court concludes that the motion should be granted in its entirety.

## LEGAL STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## UNDISPUTED MATERIAL FACTS

Before setting forth the facts relevant to this motion, first the Court must determine which evidence presented by the parties is admissible under Rule 56. First, the Court concludes that the "affidavit" signed by Leonora Arellano (Ex. 1 to Doc. No. 69) is inadmissible. Rule 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." While Rule 56(e) only states that papers referred to in the affidavit must be "sworn," an affidavit, by definition, is "a statement reduced to writing and the truth of which is sworn to *before someone who is authorized to administer an oath*." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (emphasis added). Although Ms. Arellano's affidavit purports to be an affidavit sworn under oath, it is not notarized, which renders it an unsworn document. This in

2

itself is not fatal, however, as 28 U.S.C. § 1746 provides that in lieu of a sworn affidavit, one may submit an unsworn declaration made under penalty of perjury. Section 1746 clearly sets forth the language required for such a declaration, and the testator must specifically declare that she is making her statement under penalty of perjury. Ms. Arellano's affidavit lacks this language as well. Accordingly, the Court will disregard its contents, which includes Plaintiff's material facts nos. 1, 2, and 7.

Second, in ruling upon a motion for summary judgment the Court will not consider hearsay statements or statements made without personal knowledge. *See Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) (holding content and substance of evidence opposing summary judgment must be admissible, and "[i]nadmissible hearsay evidence in an affidavit will not defeat summary judgment"); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) ("Today, we align ourselves with this line of authority and hold that Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment.").

Next, Ortega contends that Plaintiff's material fact no. 5—Plaintiff's testimony that Ortega told Superintendent Tony Archuleta ("Archuleta") that he wanted Plaintiff out of coaching and was gathering people to go to the Board of Education to get Plaintiff fired, and that Archuleta then passed this conversation on to Plaintiff—is inadmissible hearsay within hearsay. The Court disagrees. Both the statement by Ortega to Archuleta, and the repetition of it by Archuleta to Plaintiff, are non-hearsay admissions by parties opponent under Rule 801(d)(2) of the Federal Rules of Evidence, as both Ortega and Archuleta are defendants in this action.

The Court agrees with Ortega that Plaintiff's material fact no. 6 must be excluded. In his deposition, Plaintiff contends that Ellis Garcia told him that Ortega told Ellis that Plaintiff was abusing

3

kids. In some ways, this is similar to the situation presented in Plaintiff's material fact no. 5, supra. However, because Ellis Garcia is a non-party, his statements to Plaintiff are hearsay, and they do not fall into any exception to the hearsay rule. Thus, this evidence will be excluded. The same is true regarding Plaintiff's testimony, at p. 215 of his deposition, that a third party named Lenora Cardenas told him that Ortega told her that Plaintiff was abusing the kids on the basketball team. That statement is inadmissible hearsay.

The Court will exclude Plaintiff's material fact no. 8 because the cited deposition testimony does not support the facts alleged therein. The cited pages of Herman Medina's deposition testimony say nothing about a meeting between Ortega and Tony Archuleta.

Plaintiff's material fact no. 9 will be excluded in part. Herman Medina's statement that Archuleta told him over the phone that Ortega was pressuring him to fire Plaintiff is admissible non-hearsay by two party opponents. However, Medina's testimony that Ortega at some point changed his position on Plaintiff's termination (Medina Depo. at p. 55) appears to be without foundation or personal knowledge, and therefore the Court will disregard it.

The Court will disregard Plaintiff's material fact no. 11, as Plaintiff has failed to attach the cited supporting deposition testimony to his response brief.

In light of the foregoing, and after a careful review of the deposition transcripts, the Ortega affidavit, and the exhibits presented by the parties as evidence, the Court finds that the facts, viewed in the light most favorable to the Plaintiff, to be as follows: From 2002 until early 2005, Plaintiff was a counselor and the boys' basketball coach at Questa High School. In 2004 Plaintiff also became the high school's athletic director. *See* Orig. Cmplt at ¶ 5, which the school defendants admitted in their answer. Ortega's son played on the Questa boys' basketball team. Am. Cmplt. at ¶ 20. At one point,

a petition against rehiring Plaintiff as boys' basketball coach and as athletic director was circulated and signed by various members of the community, but not Ortega. *See* Ex. B to Doc. No. 56. The petition contains no libelous statements against Plaintiff, nor does the Plaintiff allege that it does. *Id*.; Plaintiff's Depo. at pp. 222-23. The record contains no admissible evidence that Ortega participated in circulating or obtaining signatures for the petition; indeed, he denies having done so. Ortega Aff. at ¶¶ 2-3 (attached as Ex. C to Doc. No. 56). However, Ortega told Plaintiff that he had helped defendants Gabriel and Roxanne Cisneros put together the petition. Plaintiff's Depo. at p. 246.

Superintendent Tony Archuleta told defendant Herman Medina, a former member of the Board, that he was being pressured by members of the community, including Ortega, to "do something" about Plaintiff "before it really got out of hand." Medina Depo. at p. 42. Archuleta also told Plaintiff that Ortega wanted to get Plaintiff out of coaching because Plaintiff was mistreating or abusing kids and that Ortega was gathering people to go to the school board meeting to have Plaintiff removed. Plaintiff's Depo. at pp. 217, 219-220. Plaintiff does not know how many times Ortega said this or when Ortega made these comments to Archuleta. *Id*. at p. 220. However, Plaintiff has alleged in both his original and Amended Complaints that Archuleta knew that Ortega's actions were based not upon fact, but on a desire for revenge. Orig. Cmplt. at ¶ 9; Am. Cmplt. at ¶ 22. Similarly, Plaintiff contends that defendant and former Board member Joe Cisneros told him that Ortega told him that Plaintiff had mistreated the kids on his team. Plaintiff's Depo. at pp. 244-45.

Prior to a January 18, 2005 meeting of the Board of Education, defendant David Zimmerman, a former member of the Board, had heard opinions from members of the community that Plaintiff was putting "mental distress" on the kids he coached. Zimmerman Depo. at p. 27. No one said specifically what Plaintiff had done to put the kids under mental distress. *Id*. at p. 28. However,

5

Zimmerman perceived that Ortega was among the community members who were against Plaintiff. *Id.*

Ortega was present at the January 18, 2005, meeting of the Questa Board of Education, including the closed session. *See* Ortega Depo. at pp. 27-28; Meeting Minutes attached as Ex. D to Doc. No. 56. The Board minutes reflect that during the public comments portion of the meeting, Ortega said that he was there "with concerns for our students and basketball team. I would like to see some action taken. There are some basketball players and parents that would like to speak their minds." Meeting Minutes attached as Ex. D to Doc. No. 56. After members of the Board said that a public discussion of school employees was improper, Ortega asked if the parents could discuss the matter in the executive session of the Board and asked to be placed on the agenda. *Id.* At his deposition, Ortega testified that he did not recall saying anything in the closed executive session of that meeting, Ortega Depo. at pp. 27-28, and the portion of the minutes presented to the Court do not contradict that testimony. Plaintiff was not at the January 18, 2005, Board meeting and has no personal knowledge of what Ortega said there, but he assumes that Ortega said that Plaintiff was mistreating and abusing children. Plaintiff's Depo. at pp. 213-15. The Board never gave Plaintiff the opportunity to respond to the accusations against him. Zimmerman Depo. at p. 67.

Ortega told defendants Archuleta and Arlene Trujillo (who then repeated it to Plaintiff) that he would "kick [Plaintiff's] ass" if they allowed him to coach in an upcoming basketball game.[1] Plaintiff was the placed on administrative leave for that game, and was told that it was for his own protection. Plaintiff's Depo. at p. 230. Ultimately, Plaintiff was not rehired as athletic director or

---

[1] Once again, what would otherwise be inadmissible hearsay comes into evidence because all the declarants are parties opponent.

boys' basketball coach, though he did retain his position as high school counselor.

## DISCUSSION

**I.     CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS UNDER § 1983**

Section 1983 provides a remedy for plaintiffs to recover for the deprivation of constitutional rights accomplished by one acting "under color of law." Although typically "[t]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity," *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595 (10th Cir.1999), a plaintiff may assert the necessary state action for Section 1983 by implicating state officials in a conspiracy with private defendants. As the Tenth Circuit stated in *Dixon v. City of Lawton, OK*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), "[a] § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law. The conspiracy provides the requisite color of state law under § 1983." (internal citations omitted). In order to show the existence of a conspiracy under Section 1983, the Plaintiff must prove that "'both public and private actors share a common, unconstitutional goal.'" *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000) (quoting *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 596 (10th Cir. 1999)). Thus, in order to survive a motion for summary judgment on a claim for conspiracy, a plaintiff must present specific facts from which one could reasonably infer a "meeting of the minds" among the alleged co-conspirators.

Applying those principles to this case, in order to state a claim for conspiracy under Section 1983 against Ortega, a private citizen, the Plaintiff had the burden to present evidence of a meeting of the minds between Ortega and the public school defendants. The record presented to the Court on this motion is devoid of evidence of any common plan or goal shared by the public school

defendants and Ortega. Rather, the Plaintiff has come forward with only a few conversations between Archuleta and Ortega, and Ortega's own actions in trying to persuade the Board of Education to hire another basketball coach. However, the evidence falls far short of showing a concerted plan between Ortega and the school defendants to deprive Plaintiff of his constitutional rights. Thus, Ortega is entitled to summary judgment on this claim.

## II.   COMMON LAW CONSPIRACY

Plaintiff seeks to hold Ortega liable for the torts allegedly committed by his co-defendants by alleging a civil conspiracy to commit various torts, each addressed below. To establish a defendant's liability for a civil conspiracy, a plaintiff must demonstrate "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer*, 1996-NMCA-022, ¶ 25, 121 N.M. 428. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability "'unless a civil action in damages would lie against one of the conspirators.'" *Armijo v. National Sur. Corp.*, 58 N.M. 166, 178 (1954) (quoting *Pullen v. Headberg*, 53 Colo. 502, 127 P. 954, 955 (1912)). A civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own. *See Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 300 (Ct. App. 1978). "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Ettenson v. Burke*, 2001-NMCA-003 ¶ 12, 130 N.M. 67. Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense. *Id.* (citing *Armijo*, 58 N.M. at 177, 268 P.2d at 346)).

Under New Mexico common law, a civil conspiracy requires a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 137 N.M. 589, 113 P.3d 859 (internal quotation marks and citation omitted). "Stated another way, an agreement by itself, without an independent, unlawful act, is not an improper means." *Los Alamos Nat'l Bank v. Martinez Surveying Services, LLC*, 2006-NMCA-081 ¶ 21, 140 N.M. 41.

For the same reasons discussed in regard to Plaintiff's claim for a conspiracy under 42 U.S.C. § 1983, the Court will grant the motion for summary judgment.

### III.   BREACH OF CONTRACT

Plaintiff's amended complaint does not appear to assert a claim for breach of contract against Ortega, because Plaintiff's contract was with the Questa Independent School District. At page 3 of his response brief, Plaintiff conceded that he has no claim for breach of contract against Ortega.

### IV.   TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS

In order to prevail on a claim for tortious interference with existing contractual relations, a plaintiff must prove that (1) the defendant had "knowledge of the contract" between plaintiff and another party, (2) performance of the contract was refused, (3) defendant "played an active and substantial part in causing the plaintiff to lose the benefits of his contract," (4) damages flowed from the breached contract, and (5) defendant induced the breach "without justification or privilege to do so." *Ettenson v. Burke*, 2001-NMCA-003 ¶ 14, 130 N.M. 67 (quoting *Wolf v. Perry*, 65 N.M. 457, 461-62, 339 P.2d 679, 681-82 (1959)). Not every interference leading to a breach of contract amounts to an unlawful act or a civil action; tort liability attaches only when the interference is

9

without "justification or privilege." *Williams v. Ashcraft*, 72 N.M. 120, 121, 381 P.2d 55, 56 (1963). In causing one to lose the benefits of a contract, the tortfeasor must act either with an improper motive or by use of improper means. *See Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 20, 125 N.M. 748, 965 P.2d 332.

Again, Plaintiff has failed to come forward with evidence to create a genuine issue of material fact on this claim. The record contains no evidence that Ortega knew of Plaintiff's contract with the Questa Independent School District. Indeed, the record presently contains no evidence of the contract itself (beyond the bare allegations in the complaint, which are insufficient on a motion for summary judgment), and without the contract and other evidence, the Court cannot determine that Questa Independent School District has breached the contract or otherwise refused performance of it. The record is entirely bare on this point. Furthermore, Plaintiff has presented no evidence that he sustained damages as a result of a breach of contract. The Court need not examine any of the remaining elements of tortious interference with contract because even a cursory examination of the record demonstrates that Ortega is entitled to summary judgment on this claim.

## V.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to recover under a cause of action for intentional infliction of emotional distress under New Mexico law, the plaintiff must show that (1) the tortfeasor's conduct was extreme and outrageous under the circumstances, (2) the tortfeasor acted intentionally or recklessly, and (3) as a result of the conduct the claimant experienced severe emotional distress. *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 57, 976 P.2d 999, 1009 (1999).

When considering the tort of intentional infliction of emotional distress, the New Mexico Court of Appeals recognized that the judiciary must set the threshold of outrageousness high enough

so that the social good from recognizing the tort will not be outweighed by unseemly and invasive litigation on meritless claims. *Hakkila v. Hakkila*, 112 N.M. 172, 178, 812 P.2d 1320, 1326 (Ct. App.) *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991).  New Mexico courts have held that liability arises only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 427 (Ct. App. 1981); *Andrews v. Stallings*, 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct. App. 1995).  Mere insults do not exceed the bounds of decency. *Andrews*, 119 N.M. at 491.  In addition, the emotional distress suffered by the plaintiff must have been reasonable and justified under the circumstances; there is no liability where the plaintiff suffered exaggerated and unreasonable distress, unless it results from a peculiar susceptibility of which the actor had knowledge. *Dominguez*, 97 N.M. at 215.  "By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 ¶ 20, 124 N.M. 613, 618 (1997).

Again, the record contains no evidence to support the elements of this claim.  Ortega's conduct, as presented in the limited evidence currently before the Court, is not sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.  At most the evidence shows that Ortega told members of the Board of Education and the Superintendent that Plaintiff should be removed from his coaching job because he was mentally and emotionally abusing kids.  While this accusation might rise to the requisite level of outrageousness if it were untrue, the

record is devoid of any evidence to permit the Court to draw that conclusion.[2]  Plaintiff presents no evidence to support the allegation that Ortega acted intentionally or recklessly; that is, that Ortega did not have an objectively good faith reason to believe in the truth of his accusations against Plaintiff. Finally, the Plaintiff has failed to present any evidence that he suffered severe emotional distress as a result of Ortega's conduct.  Thus, the Court will grant Ortega's motion for summary judgment on this cause of action.

## VI.     DEFAMATION

According to the New Mexico Uniform Jury Instructions, the common law tort of defamation has nine essential elements:

(1) The defendant published the communication; and
(2) The communication contains a statement of fact; and
(3) The communication was concerning the plaintiff; and
(4) The statement of fact was false; and
(5) The communication was defamatory; and
(6) The person[s] receiving the communication understood it to be defamatory; and
(7) The defendant knew that the communication was false or negligently failed to recognize that it was false or acted with malice; and
(8) The communication proximately caused actual injury to plaintiff's reputation; and
(9) The defendant abused his privilege to publish the communication.

NM UJI 13-1002(B), NMRA 2006.

Due to the shortage of evidence in the record, there is no genuine issue of material fact on this claim and Ortega is entitled to judgment as a matter of law.  As explained above, the record does not support the fourth element of this claim—that the statements Ortega made about Plaintiff were false.

---

[2] For example, Plaintiff has presented no deposition testimony and no affidavit in which he denies carrying out the alleged abuse.  Similarly, he has not presented the results of any investigation into the accusations that might have exonerated him. Instead, he has merely alleged in his original and amended complaints that the accusations were untrue.  On a motion for summary judgment a plaintiff may not merely stand on the allegations of his complaint, but must come forward with evidence in support of his claims.

The Court cannot assume that there is a genuine fact issue on this element absent evidence to support it. Similarly, there is no evidence to support the sixth element—that the persons receiving the communications understood them to be defamatory. Indeed, the Plaintiff has explicitly pled that Superintendent Archuleta did not believe the accusations against Plaintiff. "If a defamatory statement is made to a person who knows that the statement is untrue, then a publication has not occurred." *Silverman v. Progressive Broadcasting, Inc.*, 1998-NMCA-107 ¶ 23, 125 N.M. 500 (citing UJI 13-1003 NMRA 1998)). There is no evidence in the record as to whether the other two persons who allegedly heard Ortega's remarks about Plaintiff, defendants Joe Cisneros and David Zimmerman, believed them to be true. The seventh element of the claim requires the Plaintiff to show that Ortega knew the accusations of mental and emotional abuse were false or that Ortega acted with malice. Though Plaintiff alleged this in his complaint, he has not provided the Court with evidence to support those allegations. Finally, the record contains no evidence of the eighth element of the defamation claim, that the statements were the proximate cause of injury to Plaintiff's reputation. Accordingly, Ortega is entitled to summary judgment on the defamation claim.

## VII.   PRIMA FACIE TORT

Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid, traditional intentional tort categories. *Martinez v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMCA-083, ¶ 24, 132 N.M. 510, 51 P.3d 1164. "The elements of a prima facie tort . . . are (1) an intentional, lawful act, (2) committed with the intent to injure the plaintiff, (3) causing injury to the plaintiff, and (4) the absence of justification for the injurious act." *Padwa v. Hadley*, 1999-NMCA-067, ¶ 24, 127 N.M. 416, 981 P.2d 1234. However, it need not be shown that the act was solely intended to injure plaintiff. *Schmitz v. Smentowski*, 109

13

N.M. 386, 395, 785 P.2d 726, 735 (1990).

>    Not every intentionally caused harm gives rise to an actionable tort:
>
>> [O]nce intent to injure is established, the trial court must balance the defendant's act or acts against the justification for the act or acts and the severity of the injury, weighing (1) the injury, (2) the culpable character of the conduct, and (3) whether the conduct is unjustifiable under the circumstances. Culpable conduct has been defined as conduct that is improper, wrongful, blameworthy, and not in accord with community standards of right conduct. Unjustified conduct has been defined as conduct that is not excusable or otherwise not privileged.

*Portales Nat'l Bank v. Ribble*, 2003-NMCA-093, ¶ 4, 134 N.M. 238, 240 (internal citations omitted). The cause of action for prima facie tort should not be used to evade the required proof of essential elements of other claims. *See Stock v. Grantham*, 1998-NMCA-081, ¶ 38, 125 N.M. 564.

The Court will grant summary judgment on this claim as well because Plaintiff has failed to come forward with evidence of Ortega's alleged intent to injure Plaintiff, as well as the absence of justification for his actions.

**IT IS THEREFORE ORDERED** that *Defendant Jimmy Ortega's Motion for Summary Judgment* [Doc. No. 55] is **GRANTED**, summary judgment will be entered in favor of defendant Jimmy Ortega, and all claims against Jimmy Ortega will be dismissed with prejudice.

_____
**UNITED STATES DISTRICT JUDGE**