## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DALE CISNEROS,**

    **Plaintiff,**

v.             **Civ. No. 05-1065 JH/WDS**

**JOE CISNEROS, et al.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

   The subject of this Memorandum Opinion and Order is the *Questa School Defendants'*
*Motion for Summary Judgment* [Doc. No. 64].[1]  After considering the law, the evidence, and the
arguments of the parties, the Court concludes that the motion should be granted in its entirety.

### LEGAL STANDARD

   Summary judgment generally is appropriate when a court determines that "'there is no
genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"
*Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule
56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the
suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

   To carry its initial burden, the moving party need not negate the nonmoving party's claim.

---

[1] The "Questa School Defendants" are Joe Cisneros, Wilfred Rael, Nancy Gonzales, Joe
M. Vigil, Larry Cisneros, Herman Medina, David Zimmerman, Abe Garcia, Bernie Torres, Arlene
Trujillo, Tony Archuleta, and the Board of Education for the Questa Independent School District.

*See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## UNDISPUTED MATERIAL FACTS

The facts of this case, viewed in the light most favorable to the Plaintiff, are as follows. The Questa Independent School District ("QISD") first employed Plaintiff as an elementary school counselor for the 2000-2001 school year. As a certified instructor under the New Mexico School Personnel Act, Plaintiff has worked for QISD under a series of one-year contracts. For the 2004-2005 school year, QISD employed Plaintiff under a contract titled "Certified School Instructor Contract." That contract provides for the employment of Plaintiff from August 12, 2004 until June 6, 2005 and states, in pertinent part:

4.      In accordance with the School District's approved salary schedule for the school year 2004-2005 the Employee's salary is **$35040**, plus special increment(s) of **$1340 for 7 additional days, as per Salary Schedule, JAG/AD Varsity Boy's Basketball**, less required or authorized deductions, based upon the following factors: **MA** degree, **0** additional approved semester hours, and **4** years allowable experience. . . .

5.      This contract and the parties hereto are, and shall continue to be, subject to applicable laws of the State of New Mexico and to the rules and regulations of the State Board of Education, as they may exist.

6.      This contract may be canceled by the Superintendent for just cause, provided, that any such cancellation may be effected only in accordance with New Mexico law and any applicable rules and regulations of the State Board of Education or of the School District.

(emphasis in original). Thus, the 2004-2005 contract provides for the Plaintiff to perform duties as a JAG coordinator (essentially a certified high school coordinator for at-risk students), as well as athletic director and boys' basketball coach, a position Plaintiff had held in previous years. At some point during that school year, Plaintiff resigned from his JAG position, and QISD reassigned him to be the elementary school counselor at Alta Vista Elementary School. Archuleta Depo. at pp. 58-59.

At the beginning of the school year, some parents of student-athletes on the boys varsity basketball team, including Defendant Gabriel Cisneros, had issues with Plaintiff's treatment of their children. Archuleta Depo. at pp. 23-28; G. Cisneros Depo. at pp. 36-38. At some point, private defendants Gabriel Cisneros, Roxanne Cisneros, and Jimmy Ortega (none of whom is employed by QISD) held a meeting to discuss their concerns about Plaintiff and possible ways to have Plaintiff removed as coach. Plaintiff's Ex. 12; G. Cisneros Depo. at pp. 63-64, 66. The petition, which contains no libelous statements regarding Plaintiff, was signed by parents, students, and community members and presented to then-Superintendent Pauline Anaya, who took no action on it. G. Cisneros Depo. at p. 94. Soon thereafter Superintended Archuleta was hired, and Gabriel Cisneros approached

him regarding his concerns about the welfare of the boys' basketball program. Archuleta Depo. at p. 23. In September of 2004, defendant Nancy Gonzales, a member of the Board of Education, presented the petition to Archuleta; he took no action on it. *Id*. at pp. 46-47, 49-50. Then, in October of 2004, Archuleta reassigned Plaintiff's position as athletic director, Plaintiff's Depo. at pp. 52-54, and told Plaintiff that "Gabe and Jimmy are out to get you." *Id*. at pp. 112-113. In December of 2004, Archuleta told Plaintiff that he was getting intense pressure from unnamed community members and that he wanted Plaintiff to resign as coach. *Id*. at pp. 134-136.

On the evening of January 8, 2005, a boys' basketball game took place at which there was some sort of controversy regarding a confrontation between Plaintiff and a spectator. Archuleta Depo. at pp. 106-108 and Ex. 109 thereto. Later that evening, two members of the boys' basketball team (including Plaintiff's nephew) drove by Plaintiff's home, yelling obscenities and making obscene gestures. Plaintiff's Depo. at p. 146. Plaintiff did not call the police, but instead got into his vehicle to follow the boys in order to ascertain their identities. *Id*. at pp. 146-147. Plaintiff did not attempt to stop or confront the students. Plaintiff's Ex. 10. Plaintiff's nephew filed a police report based on the incident, as did Plaintiff. Defendants' Ex. I; Plaintiff's Depo. at pp. 153-154. Superintendent Archuleta learned of the events of January 8, 2005 and was concerned that Plaintiff had taken matters into his own hands. Archuleta Depo. at p. 100. The Board of Education, however, made no investigation into the January 8 incident, leaving that to Superintendent Archuleta. L. Cisneros Depo. at p. 34.

On January 11, 2005, Superintendent Archuleta placed Plaintiff on administrative leave for one upcoming basketball game as a result of allegations from students and parents of physical and verbal abuse by Plaintiff at the January 8 game. Ex. 109 to Archuleta Depo. On January 18, 2005,

the Questa Board of Education held a meeting.  Several parents and community members appeared at the meeting to voice concerns about the basketball program and about Plaintiff's conduct on January 8.  Archuleta Depo. at pp. 111-112; Zimmerman Depo. at pp. 35-36.  Representatives from a local newspaper and radio station also attended.  Gonzales Depo. at p. 53; G. Cisneros Depo. at p. 175-176.  Plaintiff was not at the meeting, nor did Archuleta inform Plaintiff of the meeting.  Archuleta Depo. at pp. 112-113; Plaintiff's Ex. 10.  The Questa Board of Education took no action regarding Plaintiff at the January 18, 2005 meeting, in either the general or the closed executive session, and gave Superintendent Archuleta no directives regarding Plaintiff.  Archuleta Depo. at p. 148; L. Cisneros Depo. at p. 28; Zimmerman Depo. at p. 80.  Superintendent Archuleta then decided to place Plaintiff on paid administrative leave from his position as boys' basketball coach pending an investigation of the status of the boys' basketball program and Plaintiff's role in it by an independent investigator.  Archuleta Depo. at pp. 120-123 and Ex. 110 thereto.  He also told Plaintiff that he felt "under pressure" and feared he would be fired if he did not take action against Plaintiff.  Plaintiff's Depo. at pp. 161-162; Medina Depo. at p. 42.  Superintendent Archuleta took no action with regard to Plaintiff's duties as a school counselor.  *Id.* at p. 154.  Shortly thereafter, Plaintiff presented a series of doctor's notes for sick leave, and he did not return to work as a school counselor for the remainder of the school year.  *See id.*; Defendants' Ex. M.

In the meantime, QISD retained Arthur Salazar to investigate the high school boys' basketball program and the problems between Plaintiff and parents and students.  Defendants' Ex. Q.  After interviewing Plaintiff, parents and students, Salazar concluded that Plaintiff had failed to communicate properly with students and parents, that there was some merit to the claim that Plaintiff was improperly addressing or "putting down" players, and that Plaintiff was becoming involved in

controversies outside of his counseling or coaching duties.  Salazar Depo. at pp. 29, 31, 59-60, 72.

After Superintendent Archuleta received Salazar's report, he asked Plaintiff to come off medical leave

so that the two could discuss the report and, provided that Plaintiff agreed to abide by its

recommendations, Archuleta would reinstate him to the coaching position.  Archuleta Depo. at pp.

125-129; Defendants' Exs. R and S.  Plaintiff refused to come off medical leave and return to work

so that he could be reinstated.  *Id.* at p. 127-129.  After he exhausted his sick leave, Plaintiff was on

leave without pay for the remainder of the school year.  Defendants' Ex. F.  At no point did the Board

of Education give Plaintiff a hearing to address the charges against him.  Zimmerman Depo. at pp.

67, 76.

In late March of 2005, Defendant Arlene Trujillo, Principal of Questa High School, sought

applications for a head boys' basketball coach.  Archuleta Depo. at pp. 131-132.  No one from the

QISD informed Plaintiff that he needed to reapply if he still wanted the position.  Plaintiff's Ex. 10.

Plaintiff, who was out on sick leave, did not see the newspaper advertisement for the job and did not

reapply, as in previous years he had not been required to reapply for the position.  *Id.*; Archuleta

Depo. at p. 133.  In May of 2005, QISD hired another coach to replace Plaintiff.  Archuleta Depo.

at p. 135.

QISD paid Plaintiff $21,282.30 for his work during the 2004-2005 school year, which is the

prorated amount of his work for the days he worked plus his allotted days of sick leave.  Martinez

Aff.  QISD also paid Plaintiff the full $2,000 increment for his Master's Degree and the full $2,990

salary for being head basketball coach, even though he did not work the entire school year.  *Id.*

Finally, QISD paid Plaintiff $410 (less tax withholdings), which is the prorated amount of his salary

as athletic director.  *Id.*

## DISCUSSION

**I.    CLAIMS UNDER 42 U.S.C. § 1983 (Count I)**

**A.    Due Process**

In reviewing a plaintiff's claim that he was deprived of property without due process of law, the Court must first determine whether plaintiff possessed a protected property interest such that due process protections are applicable.  If so, then the Court decides whether plaintiff was afforded an appropriate level of process.  *See Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  The question of whether Plaintiff possessed a protected property interest in his coaching and athletic director positions must be determined in reference to state law.  *See Casias v. City of Raton*, 738 F.2d 392, 394 (10th Cir. 1984).

**1.    Governing New Mexico Statutes**

Our principal objective in interpreting a statute "is to determine and give effect to the intent of the legislature."  *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401 (internal quotation marks and citation omitted). The "primary indicator" of the legislature's intent is the plain language of the statute, and the court is to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent.  *Alba v. Peoples Energy Res. Corp*., 2004-NMCA-084, ¶ 17, 136 N.M. 79.  Where the legislature defines words used in the statute, the court must interpret the statute according to those definitions. *Southwest Land Inv., Inc. v. Hubbart*, 116 N.M. 742, 743, 867 P.2d 412, 413 (1993).

Accordingly, this Court must begin its analysis with the words of the New Mexico Public School Code ("Public School Code"), NMSA 1978, § 22-1-1 et seq., of which the New Mexico School Personnel Act ("School Personnel Act"), NMSA 1978, § 22-10A-1 et seq., is a part.  The

7

Public School Code, NMSA 1978, § 22-1-2(F) defines an "instructional support provider" as "a person who is employed to support the instructional program of a school district, including . . . school counselor . . ."  Furthermore, the Public School Code includes instructional support providers in the definitions of "licensed school employees," "certified school instructors," and "certified school employees." *Id*. at § 22-1-2(G), (BB), and (CC).  The Public School Code defines "school employee" as "licensed and nonlicensed employees of a school district."  *Id*. at § 22-1-2(S).  Thus, under the foregoing definitions, as a school counselor Plaintiff qualifies as an instructional support provider, a licensed school employee, a certified school instructor, a certified school employee, and a school employee under the Public School Code.

The School Personnel Act[2] contains additional relevant definitions.  Under that statute, "'discharge' means the act of severing the employment relationship with a certified school employee prior to the expiration of the current employment contract,"  while "'terminate' means, in the case of a certified school employee, the act of not reemploying an employee for the ensuing school year." NMSA 1978, § 22-10A-2(A) and (D).  The next section of the School Personnel Act states that, "[e]xcept as provided in [Section 22-10A-22], a person employed by contract pursuant to this section has no legitimate objective expectancy of reemployment, and no contract entered into pursuant to this section shall be construed as an implied promise of continued employment pursuant to a subsequent contract." *Id*. at § 22-10A-21(E).  Section 22-10A-22, in turn, provides as follows:

> On or before the last day of the school year of the existing employment contract, the local school board or the governing

---

[2] The New Mexico Legislature enacted the School Personnel Act in 1975, and the statute was originally codified at Section 22-10-1 et seq.  In 2003, the Legislature amended the statute and recompiled it at NMSA 1978, § 22-10A-1 et seq.  Except where noted, in this Memorandum Opinion and Order the Court refers to the current codification of the School Personnel Act.

authority of the state agency shall serve written notice of reemployment or termination on each certified school instructor employed by the school district or state agency. A notice of reemployment shall be an offer of employment for the ensuing school year. A notice of termination shall be a notice of intention not to reemploy for the ensuing school year. Failure of the local school board or the governing authority of the state agency to serve a written notice of reemployment or termination on a certified school instructor shall be construed to mean that notice of reemployment has been served upon the person for the ensuing school year according to the terms of the existing employment contract but subject to any additional compensation allowed other certified school instructors of like qualifications and experience employed by the school district or state agency. Nothing in this section shall be construed to mean that failure of a local school board or the governing authority of the state agency to serve a written notice of reemployment or termination shall automatically extend a certified school instructor's employment contract for a period in excess of one school year.

The following section, Section 22-10A-23, provides that a certified school instructor must deliver his written acceptance of reemployment within fifteen days of either the date he receives written notice of reemployment or the last day of the school year when no written notice of reemployment or termination was served upon him, which will then create a binding contract of employment. Finally, Section 22-10A-24 discusses a school board's decision to terminate "employees." Section 22-10A-24 appears to be based upon length of service, rather than on classification as a certified or licensed employee:

A. A local school board or governing authority of a state agency may **terminate an employee with fewer than three years of consecutive service** for any reason it deems sufficient. Upon request of the employee, the superintendent or administrator shall provide written reasons for the decision to **terminate**. The reasons shall be provided within ten working days of the request. The reasons shall not be publicly disclosed by the superintendent, administrator, local school board or governing authority. The reasons shall not provide a basis for contesting the decision under the School Personnel Act.

9

B. Before **terminating** a **non-certified school employee**, the local school board or governing authority shall serve the employee with a written notice of termination.

C. An **employee who has been employed by a school district or state agency for three consecutive years** and who receives a notice of termination pursuant to either Section 22-10-12 NMSA 1978 or this section, may request an opportunity to make a statement to the local school board or governing authority on the decision to **terminate** him by submitting a written request to the local superintendent or administrator within five working days from the date written notice of termination is served upon him. The **employee** may also request in writing the reasons for the action to **terminate** him. The local superintendent or administrator shall provide written reasons for the notice of termination to the employee within five working days from the date the written request for a meeting and the written request for the reasons were received by the local superintendent or administrator. Neither the local superintendent or administrator nor the local school board or governing authority shall publicly disclose its reasons for termination.

D. A local school board or governing authority may not **terminate** an **employee** who has been employed by a school district or state agency for three consecutive years without just cause.

(emphasis added). While this section deals with employees whose employment has been "terminated," Sections 22-10A-27 and 22-10A-28 grant certain procedural rights to those employees who have been "discharged" under the statute. *See Santa Fe Pub. Sch. v. Romero*, 2001-NMCA-103, ¶ 11, 131 N.M. 383 (distinguishing between termination and discharge under the School Personnel Act).

## 2. Analysis of Plaintiff's Due Process Claim

A public employee such as Plaintiff must have a "legitimate claim of entitlement" to continued public employment for a property interest to arise; a "unilateral expectation" of continued public employment is not sufficient to create a property interest. *Board of Regents of State Colleges v.*

*Roth*, 408 U.S. 564, 577 (1972).  Neither the Public School Code nor the School Personnel Act directly addresses the issue presented here, which is whether an individual hired primarily for one position—in this case, as a school counselor—has a legitimate claim of entitlement to his continued employment in supplementary, extracurricular duties, such as that of an athletic coach.  In this case, at all relevant times Plaintiff continued in his position with QISD as a school counselor.  That aspect of his employment relationship with QISD did not change.

First the Court notes that because Plaintiff received the full amount of his supplemental salary for his 2004-2005 coaching duties, he has lost no economic benefits for that school year.  Therefore, Plaintiff has not suffered a constitutional deprivation of his coaching job for 2004-2005, as courts have rejected the notion that property rights exist in the mere rights and duties related to a position of employment.  *See Jett v. Dallas Indep. School Dist.*, 798 F.2d 748, 754 (5th Cir. 1986), *modified on other grounds*, 491 U.S. 701 (1989); *Schneeweis v. Jacobs*, 771 F.Supp. 733, 737 (E.D. Va.1991), *aff'd*, 966 F.2d 1444 (4th Cir. 1992) (high school teacher's property interest in supplemental coaching position was extinguished by the school board's payment to her of the full stipend due for the coaching season); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 997 (5th Cir. 1992) (public school superintendent relieved of his duties under an employment contract, but with full compensation, did not have constitutionally protected property interest in the noneconomic benefit of serving in the position of superintendent, and there was no deprivation of his property interest in the economic component of his employment, because he received full compensation); *Edwards v. California Univ. of Pa.*, 156 F.3d 488, 492 (3d Cir. 1998) (neither suspension with pay nor resultant stigma to reputation unconstitutionally deprived plaintiff of property interest); *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) ("the constitutionally protected interest in employment

11

does not extend to the right to possess and retain a particular job or to perform particular services");
*Royster v. Board of Trustees of Anderson County Sch. Dist. No. 5*, 774 F.2d 618, 621 (4th Cir. 1985)
(public employee's property interest does not extend to "the right to actively engage in and execute
the duties of [an] office").    In fact, in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545
(1985), the Supreme Court noted that a public employer can "avoid the [due process] problem by
suspending [the public employee] with pay," just as the QISD and Superintendent Archuleta did with
Plaintiff in the current case.

    Next, Plaintiff argues that he possessed a constitutionally protected property interest not only
in his continued employment with QISD in general, but specifically in his position as boys' varsity
basketball coach.  Plaintiff contends that by advertising for a new basketball coach and not rehiring
him for the position starting in the fall of 2005, the School Defendants terminated or discharged him
without just cause in violation of New Mexico law and his right of due process.[3]

    The Court disagrees, finding that under the undisputed facts presented here, QISD neither
terminated nor discharged Plaintiff.  Under the School Personnel Act, one is "discharged" when the
school district severs the employment relationship prior to the expiration of the current employment
contract.  NMSA 1978, § 22-10A-2(A).  In this case, QISD never discharged Plaintiff because it
maintained an employment relationship with him not only throughout the 2004-2005 school year, but
into the next year as well.  That employment relationship, though perhaps somewhat altered, was
never "severed" as the language of the statute requires.  Similarly, QISD did not "terminate" Plaintiff,

---

[3] For purposes of this motion, the parties do not dispute that the School Defendants did
not have just cause to terminate or discharge Plaintiff, or that they did not afford him the
procedural due process outlined in the School Personnel Act.  The only issues currently before the
Court are whether Plaintiff had a property right in his coaching position to which his due process
rights might attach, and whether he was terminated or discharged under the statute.

as that term is defined in Section 22-10A-2(D), because it did reemploy Plaintiff for the 2005-2006 school year and did not sever the employment relationship.  In reviewing the New Mexico statutes at issue in detail, the Court can find nothing to suggest that the Legislature intended to convey to public school employees a legitimate expectation in continued employment in a specific position or assignment.  Instead, the relevant definitions talk only of an "employment relationship."  Plaintiff offers no evidence suggesting that the Legislature's intentions were otherwise.  Thus, according to the plain terms of the statute, Plaintiff was neither discharged nor terminated, and therefore he did not suffer a deprivation of his employment which would invoke the Fourteenth Amendment's Due Process Clause.[4]

Accordingly, the Court will grant summary judgment in favor of the School Defendants on Plaintiff's due process claim.

### B.    Deprivation of Liberty Interest

In the Tenth Circuit, a public employee may claim a valid liberty interest "in his good name and reputation as it affects his protected property interest in continued employment." *Garcia v. City*

---

[4] New Mexico is in step with other states in not conferring property rights in specific duties to school employees.  For example, in *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001), a school suspended and temporarily reassigned a teacher to an administrative position, with pay, pending an investigation into a death of a student.  The teacher argued that, although he received his teaching salary, he had lost the opportunity to earn additional income from coaching positions, and this constituted a deprivation of property under the Due Process Clause. The Seventh Circuit rejected this argument.  *See also Brayton v. Monsom Pub. Sch.,* 950 F. Supp. 33 (D. Mass. 1997); *Hill v. Silsbee Indep. Sch. Dist.*, 933 F. Supp. 616 (E.D. Tex. 1996); *Brewer v. Purvis*, 816 F. Supp. 1560 (M.D. Ga. 1993); *Slockett v. Iowa Valley Community Sch. Dist.*, 359 N.W.2d 446 (Iowa 1984); *Tate v. Livingston Parish Sch. Bd.*, 444 So.2d 219, 221 (La. App. 1983); *School Directors of Dist. U-46 v. Kossoff*, 95 Ill. App. 3d 26, 419 N.E.2d 658 (1981); *Maupin v. Indep. Sch. Dist. No. 26 of Ottawa County*, 632 P.2d 396 (Okla. 1981); *White v. Banks*, 614 S.W.2d 331 (Tenn. 1981); *Stang v. Indep. Sch. Dist. No. 191*, 256 N.W.2d 82 (Minn. 1977); *Chiodo v. Bd. of Educ.*, 298 Minn. 380, 215 N.W.2d 806 (1974).

*of Albuquerque*, 232 F.3d 760, 769 (10th Cir. 2000) (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)).  This interest, however, is limited inasmuch as the employee must show that the employer took action to terminate based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee' standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities.  *Id.* at 771-72.  Specifically, the employee must establish that (1) the employer made a statement impugning the employee's good name, reputation, honor, or integrity; (2) the statement was false; (3) the employer made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities[5]; and (4) the statement was published.  *Id.* (internal quotation omitted).

Here, the School Defendants argue that Plaintiff has failed to present evidence that they published any false or stigmatizing information about the Plaintiff, or that such publication affected Plaintiff's ability to continue counseling or coaching.  Doc. No. 64 at p. 15.  The Court agrees.  A review of the record presented by the parties reveals no evidence that the School Defendants (with one exception) published false or stigmatizing information about Plaintiff.  The sole evidence presented in that context suggests possible publication of impugning statements by parental defendants Gabriel and Roxanne Cisneros (Medina Depo. at pp. 17-18) and their attorneys (Archuleta Depo. at pp. 116-119; Medina Depo. at pp. 36-40; Zimmerman Depo. at pp. 35-36), none of whom are agents of the QISD, or by individual School Board member Joe Cisneros (Medina Depo. at pp.

---

[5] To invoke the procedural protection of the due process clause through a claim of injury to a liberty interest, a discharged public employee must allege, for example, that defendants imposed a "stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701 (1972) (emphasis added).

14

22-25). Though comments were made by members of the public at the January 18, 2005 meeting of the Board of Education, Plaintiff has presented no evidence that the School Defendants actually published those comments.[6]

The fact that the School Defendants (with the exception of defendant Joe Cisneros, who spoke to someone called "Piffi") made no public statements disparaging Plaintiff or harming his standing or associations in the community is fatal to his claim. The Supreme Court has "rejected the theory that the mere fact of dismissal, absent some publicizing of the reasons for the action, could amount to a stigma infringing one's liberty." *Board of Curators v. Horowitz*, 435 U.S. 78, 83 (1978) (citing *Bishop v. Wood*, 426 U.S. 341 (1976)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 n. 13 (1985) (noting that "the failure to allege that the reasons for the dismissal were published dooms" plaintiff's liberty interest claim); *Dickeson v. Quarberg*, 844 F.2d 1435, 1440 (10th Cir. 1988) ("A liberty interest is not violated when one is discharged without public disclosure of the reasons for the discharge."). In light of the foregoing, it is even less likely that a mere suspension with pay, as opposed to a dismissal or discharge, will give rise to a liberty claim.

In addition, there is no evidence that any of the School Defendants made disparaging remarks about the Plaintiff at a public meeting—indeed, there is no evidence that Plaintiff's name was actually

---

[6] Plaintiff's own "Statement of Facts" does not support his claim that the School Defendants published statements impugning his good name and reputation. Plaintiff failed to attach some or all of the evidence cited in his paragraphs 1, 21, 22, and 24, and even if the evidence were there, those "facts" do not demonstrate publication by the School Defendants themselves. Further, in paragraph 26 Plaintiff alleges that disparaging statements made by Gabriel and Roxanne Cisneros at a Board of Education meeting were reported on the radio. However, the cited deposition testimony does not support that assertion. Rather, the testimony states that the radio program was critical of Gabriel Cisneros, not of Plaintiff.

mentioned at the January 18, 2005 School Board meeting[7]—nor did any School Defendant take official action against him at a public meeting.  After the meeting took place, Superintendent Archuleta informed Plaintiff in a letter that he was on administrative leave with pay.  School Defendants' Ex. L. Not only does the letter contain no disparaging statements about Plaintiff, but also there is no evidence that any school official published the letter.  Mere speculative rumors circulating in the community as a result of the School Defendants' failure to publish do not establish a deprivation of a liberty interest.

Furthermore, Plaintiff has no claim for violation of his liberty interest, even against defendant Joe Cisneros, because he has failed to come forward with any evidence that any School Defendant's published statements foreclosed future employment opportunities for Plaintiff.  Plaintiff presents no evidence that he has applied for and been denied other coaching positions, for example.  As this is a required element of Plaintiff's claim, the failure of proof on this issue is fatal.

## II.      BREACH OF CONTRACT (Count II)

Plaintiff argues that the School Defendants breached paragraph 6 of his 2004-2005 employment contract by ending his employment as the boys' basketball coach without just cause.  That provision states that the contract—which was for the term August 12, 2004 to June 6, 2005—could be "canceled" only for just cause and only in accordance with New Mexico law.

The Court disagrees with Plaintiff's contention that the School Defendants canceled the contract to employ him as the basketball coach.  The contract provided that the QISD would employ Plaintiff in that position for the 2004-2005 school year.  The undisputed material facts are that in

---

[7] The only minutes of this meeting that the Court was able to locate in the record are attached as Exhibit D to Doc. No. 56, Defendant Jimmy Ortega's brief in support of his motion for summary judgment.

January of 2005, Defendant Archuleta placed Plaintiff on paid administrative leave pending an investigation. Those facts also demonstrate that after he was placed on administrative leave, Plaintiff went on long term sick leave, and that Defendant Archuleta offered to reinstate Plaintiff to coaching, but Plaintiff remained on sick leave until the end of the school year. The School Defendants paid Plaintiff for the entire year of coaching, even though he was on sick leave for several months, and gave him an opportunity to return to his position. Given Plaintiff's inability to return to work in the spring of 2005 and thereby complete his coaching obligations for the 2004-2005 school year, Plaintiff left the School Defendants little choice but to look for a new basketball coach for the 2005-2006 school year. Furthermore, the contract contains no promise, express or implied, to rehire Plaintiff as a coach for the following school year. Under these facts, the Court concludes that the School Defendants did not "cancel" or otherwise breach the contract, but instead satisfied their obligations. The School Defendants' motion for summary judgment will be granted.

## III.    STATE TORT CLAIMS

### A.    Defamation (Count VII) and Tortious Interference With Existing or Prospective Contractual Relations (Count III).

Plaintiff does not dispute the School Defendants' contention, at p. 19 of their motion, that Plaintiff is not asserting claims for defamation and tortious interference against the School Defendants. Accordingly, the Court will enter summary judgment in favor of all the School Defendants on these claims.

### B.    Intentional Infliction of Emotional Distress (Count IV) and Prima Facie Tort (Count VI)

The New Mexico Tort Claims Act ("NMTCA") provides that governmental entities and public employees, while acting within the scope of their duties, have immunity from liability from tort

except as waived by the specific provisions of the NMTCA.  NMSA 1978, § 41-4-4(A) (1976, prior

to 2001 amendment).  Neither intentional infliction of emotional distress nor prima facie tort is among

those causes of action for which the NMTCA waives immunity.  *See* NMTCA, NMSA 1978, §

41-4-1 et seq.; *Garcia-Montoya v. State Treasurer's Office*, 2001-NMSC-003 ¶ 49, 130 N.M. 25

(affirming summary judgment on plaintiff's claim for intentional infliction of emotional distress on

grounds that defendant was immune under the NMTCA, and because there was no evidence that he

was acting outside the scope of his duties); *Derringer v. State*, 2003-NMCA-073 ¶ 16, 133 N.M. 721

("Prima facie tort is not included in the specific provisions of the Tort Claims Act and, therefore

Defendants enjoy immunity from Plaintiff's claim.").

      However, Plaintiff argues that individual defendant Joe Cisneros is liable for these torts[8]

because he was not acting within the scope of his duties, but rather "he acted on his own, in a wholly

private capacity."  Plaintiff's Response at p. 21.  Under the NMTCA, "'scope of duty' means

performing any duties that a public employee is requested, required or authorized to perform by the

governmental entity, regardless of the time and place of performance[.]"  NMSA 1978, § 41-4-3(G)

(2003).  New Mexico law establishes that a public employee, such as Joe Cisneros, may be within the

scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even

criminal.  *See Risk Mgmt. Div. v. McBrayer*, 2000-NMCA-104, ¶¶ 12, 17, 129 N.M. 778 (explaining

that the NMTCA may require a governmental entity to defend and indemnify its employee even if the

---

[8] At page 21 of his response brief, Plaintiff appears to argue that defendant Joe Cisneros should be held liable not only for intentional infliction of emotional distress and prima facie tort, but also for defamation.  However, Plaintiff's ostensible defamation claim against Joe Cisneros fails for the same reasons as do his claims against the other defendants.  First, the New Mexico Tort Claims Act does not waive Joe Cisneros' immunity for this tort.  Second, there is no evidence that Joe Cisneros acted outside the scope of his duties, and therefore he cannot be held liable for defamation as a private citizen.

employee "acts fraudulently or with actual intentional malice to injure another," and that "the legislature likely foresaw the possibility that a public employee could abuse the duties actually requested, required or authorized by his state employer and thereby commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of those duties"). As further explained by the New Mexico Supreme Court, "the TCA clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Celaya v. Hall*, 2004-NMSC-005, ¶ 25, 135 N.M. 115. Therefore, Joe Cisneros' alleged wrongful motive is simply irrelevant, as long as there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform." *Id*. ¶ 26 (internal quotation marks and citation omitted).

Here, Plaintiff has argued that Joe Cisneros was acting outside the scope of his duties as a member of the Questa Board of Education, but he has failed to present evidence to support that claim. Plaintiff has presented only the testimony of Defendant Herman Medina, who states that Joe Cisneros attempted to persuade someone called "Piffi" at a basketball team that Plaintiff was abusing his players. The cited testimony is fairly vague and non-specific, and therefore it is far from clear that Joe Cisneros' actions at that moment were entirely outside the scope of his duties. In other words, Plaintiff fails to specify any actions by Joe Cisneros which he was not requested, required, or authorized to perform. In addition, even if Joe Cisneros were acting outside the scope of his duties, the Court holds as a matter of law that this single incident by Joe Cisneros is insufficient to create a genuine issue of material fact on the tort claims for intentional infliction of emotional distress, prima facie tort, or defamation.

Accordingly, the Court will grant summary judgment to all the School Defendants on Counts

IV and VI of the Amended Complaint.

**IV.    CONSPIRACY (Count V)**

In *Dixon v. City of Lawton, OK*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), the Tenth Circuit stated that "[a] § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law.  The conspiracy provides the requisite color of state law under § 1983." (internal citations omitted).  In order to show the existence of a conspiracy under Section 1983, the Plaintiff must prove that "'both public and private actors share a common, unconstitutional goal.'"  *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000) (quoting *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 596 (10th Cir. 1999)).  Thus, in order to survive a motion for summary judgment on a claim for conspiracy under § 1983, a plaintiff must present specific facts from which one could reasonably infer a "meeting of the minds" among the alleged co-conspirators.

Similarly, to establish a defendant's liability for a civil conspiracy under New Mexico common law, a plaintiff must demonstrate "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts."  *Silva v. Town of Springer*, 1996-NMCA-022, ¶ 25, 121 N.M. 428.  Under New Mexico common law, a civil conspiracy requires a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 137 N.M. 589, 113 P.3d 859 (internal quotation marks and citation omitted).  A civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own.  *See Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444

20

(Ct. App. 1978).  "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members."  *Ettenson v. Burke*, 2001-NMCA-003 ¶ 12, 130 N.M. 67.

In order to survive a motion for summary judgment on his claim of conspiracy, the Plaintiff had the burden to present evidence of a meeting of the minds among the School Defendants and a common goal to violate his constitutional or common law rights.  The record presented to the Court on this motion is devoid of evidence from which a reasonable jury could infer any common plan or goal shared among the School Defendants to harm Plaintiff.  Therefore, summary judgment in favor of the School Defendants is appropriate.

**IT IS THEREFORE ORDERED** that *Questa School Defendants' Motion for Summary Judgment* [Doc. No. 64] is **GRANTED**.



_____
**UNITED STATES DISTRICT JUDGE**

21